Good morning. Good morning. Good morning, Your Honors. My name is Emily Philppe and I represent Edwin Tolentino in this matter. This morning I'll be focusing my remarks on the first and third issues raised in the briefs. The 20-year sentencing add-on for personally discharging a firearm does not apply to the offense of attempt first-degree murder of a peace officer for two reasons. One, the language of the statute, and two, this Court has just recently decided this very same issue. The language of the attempt first-degree murder sentencing statute is clear and unambiguous. The 15, 20, 25 to life firearm add-ons do not apply when the State proceeds under subsection A, attempt first-degree murder of a peace officer, EMT, or IDOC employee. Why? This is clear from the format of the statute. The way the statute is written, it says that the sentence for attempt to commit first-degree murder is a class X felony except that, and there are four subsections here. The first one is attempt to commit first-degree murder of a peace officer, EMT, IDOC employee, and it says in that case the sentence shall be a term of 20 to 80 years. Then B is attempt to commit first-degree murder while armed with a firearm. Fifteen years shall be added to the term of imprisonment. C is the 20-year sentence. Does it say anywhere in that statute that, and oh, by the way, only one of these can apply? No, it doesn't. Is that what I'm saying? In other words, or does it say B and C, no, B, C, and D, I guess, right? Yes. Does the term only apply if the victim is not a police officer? It doesn't have an or between the subsections, but it also doesn't have an and between the subsections. So the way it's formatted right now, it's, you know, the general attempt first-degree murder, and then it says except, and it's four exceptions. And there's nothing to say that these exceptions aren't equal. And I think I would, my argument is that the format of this statute, in fact, suggests that they are alternative and that they are all equal. And the state's reading would require an and somewhere between these statutes. Also, if the legislature did intend for the 15, 20, 25 to life to apply to subsection A, they could have easily done that. They could have integrated those, that language into subsection A or put the and in there at some point. Also we have Justice Wolfson's recent decision in Douglas. Douglas, the court held that firearm add-ons do not apply to subsection A. The court held that... In that case, the Douglas case, you know, I had the distinct impression, and maybe it's just because I'm not too bright, that this was kind of a throw-in at the end of the case. That he was, actually this was the inimitable people versus sharp case, which finally the court decided to follow along, and now we're going to correct ourselves. And that was the majority of the, my reading was that was the majority of the Douglas opinion. And then, oh, by the way, the state tried to get cute here at the end by saying that it's a void sentence, blah, blah, blah, blah, blah, et cetera, et cetera. And we're going to address that too, kind of. I mean, yes, the majority, if you're looking at the length of the opinion, does deal with sharp and whether it applies retroactively. However, they did, they do have this section, and we can't ignore that. I mean, it's the only case law out there that's addressed this issue at this point. The question now, do you know, has that been cited anywhere, the Douglas case, for the ruling in Douglas, or what you would like us to say is the ruling in Douglas, whatever? Has that been cited again by anybody? This issue has not come up in any other published decision. Magic. Don't you hate them when they do this? I kind of do, yes. But, Your Honor, as it stands, it hasn't been overruled either. Right. And it might be this throwaway, but the way it's worded, it does seem that the judge, I mean, they just, they say, you know, the plain, ambiguous language of the statute, that's what it says. I feel like they, the court. It's their words, the plain and ambiguous. They also go on to say. Unambiguous. I believe Justice Wolfson also goes on to say that it's not for us to make these decisions, it's for the legislature, but then he makes the decision anyway. Well, he says that you can't read in, you can't add language to the statute, and accepting the state's position would require reading in some language the statute. If the legislature didn't intend what it wrote, you know, if they wanted these two, the firearm add-ons to apply to subsection A, they could have done that. Or maybe that's what needs to happen. Maybe it needs to go back down to Springfield for them to add that. But as it stands right now, we have a statute which doesn't say and, doesn't say or, it shows all four exceptions as equal, an alternative, and we have Douglas, which, again, has not yet been overruled. As far as Douglas is concerned, is that part of the holding in the case, or would you say that might be? It's a holding. It is a holding. Yes. Douglas holds that sharp doesn't apply retroactively and then says, you know, additionally we hold that the firearm add-ons do not apply to subsection A. Is the sentencing range for B, C, and D the same as A? No. For A, A is 20 to 80. A is 20 to 80. And B, C, and D is what? It would be 21 to 45 for B, 26 to 50 for C, and then 31 to life for D. So each is different. Each is different, depending on the use. So that wouldn't play into our consideration of whether or not A would allow enhancement. Correct. And the Douglas court says that, you know, the sentence already is enhanced without need for further provision, and they felt that adding the firearm add-ons to this already enhanced sentence in the Douglas court, Justice Wilson, that it's adding more to the statute. Also, the state's position is illogical and arbitrary in the sense that the state wants to pile on all of these applicable subsections, arguing that they can be kind of stacked on top of each other. So in this case, Tolentino received a 20-year sentence. What do you think the judge would have done, sentencing-wise, if he had been advised, he or she, I can't recall, it's a he or she, isn't it? Yes. He had been advised that, oh, no, that doesn't apply. The add-on for the weapon does not apply. What do you think the judge would have said? You think the judge would have said, oh, okay, then I'm going to sentence him to 48 years? We don't know. I mean, as it stands, during sentencing, the state is the one that said, and don't forget, there's this 20-year add-on that applies. However, you're asking us just to vacate the enhancement. Correct. But keep the sentencing under 8. What do you think the judge is going to do if that happens? Well, the judge made it very clear, I don't think it needs to go back to re-sentencing, but the judge made it very clear during sentencing that the attempt to murder was the 28 years and the 20 was the add-on. I mean, this was very clearly delineated by the trial court. And as such, I don't believe that there's any need for it to go back down because I think that we can take care of that here by just striking the void portion of the sentence. So is the sentence void? We can take care of that now? We can take care of that. Again, you know, we're asking for this court. Sometimes it's better to try to get to first base before you try to hit a home run. So is the entire sentence void? Just the add-on, Your Honor, is what we're arguing because he was charged under subsection A and the sentence for subsection A, attempt first degree murder of a peace officer, is fine. That's not the part that we're arguing cannot be applied under Douglas and under the plain language of the statute. Also, construing the statute as written gives prosecutors more options. The state can choose how to charge. They can proceed under subsection A or they can proceed with straight attempt murder and then they'd have the option for going with the firearm add-ons. Interesting question. And I believe it's in your brief somewhere that are these individual and specific crimes or is there one attempt first degree murder and then we have these variations of the attempt first degree murder? Do you get my drift? I think I do. I'm not sure I do. Go ahead. I'll try to answer. Attempt first degree murder is a separate crime from attempt first degree murder of a peace officer, IDOC employee, EMT. However, this attempt sentencing statute provides for five separate sentencing ranges. You know, the general attempt first degree murder sentencing range and then attempt first degree murder of a peace officer, EMT, IDOC. So there's only one attempt first degree murder but there's different sentence ranges. Is that what you're saying? Under this statute, yes. For these reasons, we ask that you strike the 20-year add-on from Tolentino's sentence. Tolentino's convictions for armed habitual criminal attempt murder of a peace officer and aggravated discharge of a firearm also violate the one act, one crime rule. Tolentino possessed two guns, a .45 caliber automatic and a .25 caliber Beretta. Under the state's theory, Tolentino used the .25 to shoot at Patrick Cady, the basis of the aggravated discharge conviction. After shooting at Cady, he gets in his car and he drives away. The police are called and eventually they pull over his car. Tolentino gets out of the car, he throws down that weapon, which the police recover, and then he starts running. The police chase after him and at one point he pulls the .45 caliber from his waist and turns and shoots at a police officer and then goes and hides in a yard where he is picked up, where he's arrested. That second gun is never found, but there are .45 caliber shell casings found in the yard near where he shot the police officer. The problem here is that the armed habitual criminal indictment does not specify which gun Tolentino was accused of possessing, the .45 or the .25. The indictment discharged Tolentino with possessing any firearm after having been convicted a total of two or more times. There's two guns involved, therefore Tolentino can only be properly convicted of two offenses based on the possession of these two separate guns. If it's the .45, the gun Tolentino fired at the officer, then the attempt to murder the peace officer and the armed habitual criminal are based on the same act of possessing that .45. If it's the .25, the gun he shot at Katie, then both the aggravated discharge and the armed habitual criminal are based on the same act of possessing that gun. Under CRESPO we know that it's the state's responsibility to apportion offenses at the trial and that apportioning on appeal for the first time is profoundly unfair. This is similar to drug possession and distribution. When a defendant has been convicted of both possession and the distribution of the same drug, it's been held to violate the one act, one crime rule. For remedy, courts look to the relative punishments of the various offenses to determine which are more serious. Here, the attempt first degree murder of a peace officer is a Class X felony and so is the armed habitual criminal. While the aggravated discharge is a Class I felony, as such it would be the least serious offense. For these reasons, we ask that this court vacate Tomtino's conviction for aggravated discharge of a firearm under the one act, one crime rule and a 20-year firearm add-on under the first issue. Thank you. Thank you very much, Counsel. Good morning, Your Honors. I'm Cook County Assistant State's Attorney on behalf of the people of the State of Illinois. May it please the Court. The plain language of the attempt statute is the beginning and end of the inquiry. There is nothing in the plain language of the statute that prohibits the application of both subsection A, the status provision, and subsection C, the means of commission or the firearm add-on provision to defendants' attempt murder conviction. What's your best case? My best case? Best case supporting that position. Your Honor, I'll … Or not supporting that position if you wanted to do that one, too. That's fine. Every case that sets forth the principles of statutory construction support my position. The defendant and the Douglas Court err in reading into the statute, limiting language that is not there. The statutes operate in the manner in which they're written, where the provision, the status provision, applies if the facts support it, if the victim's a police officer. The firearm provision applies if the defendant used a gun to commit a crime against his intended target, a police officer. There's nothing within any part of the sentencing section of the statute that prohibits the application of both of these provisions where the evidence supports it. And, in fact, the trial court is mandated to impose them both together. Excuse me. What's your name? Catherine Sherrill. Oh, you're Catherine. Okay. If we were to write this your way, what do we say about Douglas? How do we handle Douglas? As Justice Karnes has pointed out, Douglas was primarily concerned with the implications of Sharp, and that court thought and felt that the defendant in Douglas's sentence was not void when applied and, therefore, perhaps it would be unfair to change it, filing Sharp, and it threw in as an alternative holding this holding with respect to the attempt murder statute. This court, because Douglas adds to it, we either concur or we don't concur, right? Yes. Bottom line? Yes. Counsel, let me ask you this. Could every part of that sentencing statute apply? In a certain case, if it were a police officer, the defendant had a firearm, defendant discharged a firearm, and defendant caused bodily harm? I mean, every one of those would apply, then, would they not? No, no. Contrary to defendant's misrepresentation, the status provision was not enacted in the same public act as the firearm enhancement add-on provisions. The firearm add-on provisions were enacted in one act as a unit and operate together as a unit. They have an entirely different legislative purpose than the status provision. The status provision was enacted seven years before the add-on provisions, and it stood alone in the attempt murder statute for quite a while. And it has a different purpose, and its purpose is to protect these particular victims, police officers, correctional guards, EMTs, because of the heightened risk that their status poses. The firearm provisions enacted well after the status provision were enacted, like I said, for a different purpose, and that's to deter the use of firearms. They must be combined where the two factors appear together in a case. I don't know the ‑‑ respectful. I don't know that that answers Judge Conner's question. Not really. Okay. I mean, I can see a circumstance where all of these would apply, and you could sentence them to 80, 15, 20. Or you had the gun, you shot the gun, and blah, blah, blah. Okay. The 15, 20, 25‑to‑life provisions operate differently than the status provision. They were inserted into many different criminal offenses throughout the code. They've been interpreted many, multiple times to operate where you pick the ‑‑ the fact finder finds the existence of one of the factors, and one is imposed on a single conviction. The legislature has acquiesced in that interpretation and that construction with respect to these three 15, 20, 25‑to‑life provisions, and has indicated by its acquiescence that it agrees with that construction. So no one has ever applied these firearm provisions stacked together on a single conviction, and that would be contrary to the legislative intent. The ‑‑ where the status provision also is present in the case to, as you said, what would the trial court do? The trial court, he'd have to pick between one or the other. That would defeat the purpose, the different purposes behind both of these provisions and controvert the legislative intent. And it would lead to an absurd result that a defendant who happens to pick a police officer as his intended target and uses a firearm, he, and only he, to pick these protected status victims would be exempt from the firearm enhancements which the legislature enacted to deter the use of firearms. So that kind of a construction would be absurd. Applying both of them is the only way to give effect to the different intents behind the legislative enactments. Counsel, can I ask you your argument relative to what part of the sentence should be voided or is void, both the original sentence and the enhancement, or what's your argument? None of the sentence is void. It's mandated by statute. It's entirely proper and ‑‑ But just address that distinction that's made. If this court finds that the add‑on provision cannot be combined with the statute, with the status provision, is that your question, Your Honor? Then the sentence is still proper because it's within the 20 to 80 year range of the subsection A. Are you saying we can't send it back for an entire resentencing if we were to buy the defendant's argument? And could we send it back for resentencing under A alone? That is an option that this court could choose, yes. But I would argue that is entirely unnecessary. I understand that. Of course. Another point with respect to defendant's format argument, that because they're separated into different sections, they are mutually exclusive, that, as I pointed out, controversial legislative intent and the enactment history. But in addition, the reason that they appear in this statute in the format that they appear is because the status provision was enacted separate and long before these other enhancement provisions. And the firearm provisions are very general add‑on provisions that the legislature enacted to apply to multiple offenses and they were added into several offenses in the code. They don't refer to the attempt murder status provision because of the generality of the enactment and the efficiency to insert it into multiple provisions. Do we agree they could have been written better? I mean, this statute could have been written a little better. Oh, no. I don't know that I can second guess the wisdom of the legislature. No, you can't. Maybe I could in my office. Is there an attempt first‑degree murder charge generally and then also a specific attempt first‑degree murder? Go ahead. No, there's not, Your Honor. The language of the statute in subsection A says attempt first‑degree murder when the aggravating factor is, and it refers to the murder offense. Your position or the State's position is that there can be more than one, and I say this advisably, aggravating factor? Absolutely. There is in this case and both the status, and they operate differently, too, by the way. The status provision elevates the range, the whole range, and the firearm provision adds a specific amount of time onto the applicable range, whatever it is, because it applies generally to multiple offenses. The Supreme Court has rejected the notion that there's multiple murder offenses in Illinois based on aggravating factors that can be added. Therefore, there can only be one attempt murder offense, logically. So there's, and there certainly is no aggravated attempt murder offense anywhere in the code. So for these reasons, this court should affirm the trial court's imposition of defendant's 48‑year sentence for his attempt murder conviction. And briefly, with respect to the King issue, the armed habitual criminal conviction must be affirmed because for two reasons. First, it is supported by independent separate acts that comprise the prior convictions, delivery and robbery. Secondly, defendant here, as counsel indicated, went on an extended crime spree. He committed multiple acts in multiple locations over quite a long period of time. He not only did he possess the gun in order to make the two shootings, to commit the two shootings, but long after he shot at Katie and the possession intertwined with that, he jumped in his car, in possession, of course, in the state, can't apportion this possession, because he had both guns in his possession in the car, and he went on a high‑speed police chase throughout the neighborhood for an extended period of time while in possession of both of those guns. After that, that possession of both of those guns is separate and distinct from the possession related to the shooting with Katie and the possession related to the subsequent shooting at Officer Junkovich during a subsequent foot chase. So for those two reasons, the armed habitual criminal act does not violate the King doctrine at all and should be affirmed. For these reasons and those stated in our briefs, the people ask this court to affirm defendant's convictions and sentences. Thank you. As the state pointed out, I erroneously stated in my reply brief that the sentencing range in subsection A was increased in the same public act as the firearm add-ons were added on. However, I think it's important to realize that subsection A did exist beforehand. It said attempt to commit first degree murder is a class X felony, except when the victim is a peace officer, EMT, IDOC. Then the sentencing range is 20 to 80. So when Public Act 91404 came around, the legislature chose to go into that exception and chose to make the peace officer a subsection, subsection A. It chose to put the firearm add-ons on an equal footing with this subsection A. Of course, the legislature could have come in and said, we keep that as an exception to the general sentence for peace officer and then put in the firearm add-ons as another level, another part. It didn't have to put it in with the peace officer section. We just can't add language. You know, the state said there's nothing that prohibits the stacking, but there's nothing that allows it. It doesn't say and, and we just can't read that in. Also, the state mentioned the possible absurdity of a defendant who shoots at a peace officer being exempt from these firearm add-ons and how that would be problematic. But the state can choose how to charge. Just because the victim is a peace officer doesn't mean that the state has to proceed under that subsection. I think it depends upon what evidence the state has. Sometimes they don't have strong evidence that the defendant knew he was a peace officer. Sometimes that section just isn't there and maybe they would prefer to go under the firearm add-on and just straight attempt first degree murder, which would give them the high point of the range at life if they wanted to do so. As for the third issue, the state is suggesting that the possession while Tolentino was in the car makes this a separate offense, but that's apportioning these offenses right now. The state can't do that. Nowhere in the indictment did the state specify that the possession in the car was the possession. They're talking about it. It was a general armed habitual criminal possessing a firearm, and we just can't specify that at this point. It's too late. For these reasons, we ask that you strike the 20-year add-on and the armed habitual criminal offense. Thank you. Thank you very much. Thank you. We'll take another advisement.